IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORDIS CORPORATION, | ) | **REDACTED PUBLIC** |
| *Plaintiff,* | ) | **VERSION** |
| v. | ) | |
| MEDTRONIC VASCULAR, INC., BOSTON | ) | C.A. No. 97-550-SLR |
| SCIENTIFIC CORPORATION, and SCIMED | ) | |
| LIFE SYSTEMS, INC., | ) | |
| *Defendants.* | ) | |
| | ) | |
| MEDTRONIC VASCULAR, INC., | ) | |
| *Plaintiff,* | ) | |
| v. | ) | C.A. No. 97-700-SLR |
| CORDIS CORPORATION, JOHNSON & JOHNSON | ) | |
| and EXPANDABLE GRAFTS PARTNERSHIP, | ) | |
| *Defendants.* | ) | |
| | ) | |
| BOSTON SCIENTIFC CORPORATION | ) | |
| and SCIMED LIFE SYSTEMS, INC., | ) | |
| *Plaintiffs,* | ) | C.A. No. 98-19-SLR |
| v. | ) | |
| ETHICON, INC.; CORDIS CORPORATION; and | ) | |
| JOHNSON & JOHNSON INTERVENTIONAL | ) | |
| SYSTEMS CO., | ) | |
| *Defendants.* | ) | |

**OPENING BRIEF IN SUPPORT OF CORDIS' MOTION TO REINSTATE
AND UPDATE THE DAMAGE VERDICTS AGAINST AVE AND BSC**

*Of Counsel:*

Gregory L. Diskant
William F. Cavanaugh, Jr.
Eugene M. Gelernter
Michael J. Timmons
Scott B. Howard
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000

Eric I. Harris
JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, NJ 08933-7002

Dated: April 26, 2005

ASHBY & GEDDES
Steven J. Balick (#2114)
John G. Day (#2403)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Cordis Corporation*

## Introduction

After more than seven years of litigation, including trials in 2000 and re-trials in 2005, it is time for this case to come to an end. On re-trial, AVE and BSC again have been found by separate juries to infringe the valid claims of the asserted patent(s). What remains is: (1) reinstatement of the damage verdicts from December 2000; (2) adjustments for prejudgment interest (with respect to both defendants); and (3) adjustments for infringing sales of the NIR stent since December 2000 (with respect to BSC only). Cordis now moves for this relief.

It was sensible to await the results of the recent retrials before turning to damages, because a verdict in the retrials in favor of either AVE or BSC would have turned the stents sold by that defendant into "non-infringing substitutes." That, in turn, would have upset the basis on which damages were calculated in December 2000 and would have required a reassessment of damages. However, that possibility did not come to pass. The verdicts in the <u>AVE</u> and <u>BSC</u> retrials in Cordis' favor have restored the AVE and BSC stents to their status as infringing products – and thus restored the AVE and BSC stents to the infringing status on which the damages cases were tried four-plus years ago.

The remaining infringing alternative relied upon by Cordis is the ACS stent. The parties tried the issue of whether the ACS stent is infringing as part of the damages trials in 2000, and the changes in claim construction cannot have any possible effect on that analysis. In particular, the revised claim construction does not provide the defendants with any non-infringement argument they did not have in 2000. The ACS stents are cut from a tube, like the preferred embodiment of the '762 patent, and they infringe the '762 patent, as Cordis demonstrated in the damages trials and as an arbitration panel has found. Indeed, the Court commented during the pretrial conference before the recent trials that "the ACS stent of all that

stents that were at issue initially … was the most closely patterned after some of the claims

because it's a tube, if slots were taken out." Ex. 1 (2/10/05 Tr. 36:7-10).

      Because the changes in claim construction did not effect the damages verdicts, the

damages verdicts accordingly should be reinstated. In addition, the verdicts should be adjusted

to account for prejudgment interest and post-verdict sales of BSC's NIR stent.

**A.     The Revised Claim Construction**
**       Did Not Raise Any New Issues Relating to Damages**

      For both "substantially uniform thickness" and "slots formed therein," the change

in claim construction did not raise any new issues regarding damages.

**    1.    The Revised Claim Construction**
**         Did Not Raise Any New Issues Concerning ACS's Stents**

      At the damages trials in December 2000, Cordis offered evidence that the stents in

ACS's Multi-Link family of stents infringe the Palmaz '762 patent and therefore did not qualify

as "non-infringing alternatives" until Cordis granted ACS a license in April 2000.

      The change in claim construction did not effect this analysis. The ACS stents –

like the preferred embodiment of the Palmaz '762 patent – are cut from a preexisting tube. As

Cordis' engineering expert, Dr. Collins, testified in the BSC damages trial, the ACS stents are

manufactured "by starting with a stainless steel tube and removing material from that" – a

process that is "identical" to the method of making the preferred embodiment of the '762 patent.

Ex. 2 (Tr. 3210:11-18) (Collins testimony in BSC damages trial); see also id. (Tr. 3088:22-25,

3090:23-3091:1) (Collins testimony in AVE damages trial).

      Because ACS's stents are cut from a preexisting tube, they readily they meet the

"substantially uniform thickness" and "slots formed therein" limitations, under both the revised

claim construction and the earlier one. See Ex. 2 (Tr. 3095:10-3096:3) (Collins testimony in the

AVE damages trial); id. (Tr. 3202:22-3231:8) (Collins testimony in the BSC damages trial). If

anything, a reasonable jury that found the ACS stents infringing under the earlier construction "could not have avoided finding literal infringement under the correct, broader construction ...." Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1329 (Fed. Cir. 2002).

Indeed, in the recent retrials, Cordis offered proof about the ACS stents that neither defendant contested. In the AVE trial, Cordis proved that the ACS stents, along with the other market leaders, combined the three principal ideas of Dr. Palmaz – a first diameter for intraluminal delivery, a second diameter that is variable and deformed upon the application of force, and a tubular member with longitudinal slots. Buller 3/8/05 Tr. (D.I. 1388) at 720-721; Heuser 3/10/05 Tr. (D.I. 1390) at 1572. In the BSC trial, Cordis proved that the ACS stent, along with other stents on the market, practiced claim 23 of the '762 patent. Ex. 3 (Buller 3/21/05 Tr. at 704-707); id. (Fischell 3/17/05 Tr. at 200-201). Neither BSC nor AVE suggested in any way that the ACS stent did not infringe.

### 2. The Revised Claim Construction Did Not Raise Any New Issues Concerning BSC's Theory that It Could Have Marketed a Hypothetical Stent with a Non-Uniform Thickness

In a brief filed last Spring (D.I. 1217 at 20-22), BSC asked for a re-trial of damages in order to raise the theory that a hypothetical stent with double thickness at the weld spot would have qualified as an "acceptable noninfringing substitute" for the patented invention. Of course, BSC never made or sold this hypothetical stent.

REDACTED

Such a stent would lack the advantages of the patented invention and would not qualify as an "acceptable noninfringing substitute." Kaufman Co. v. Lantech, Inc., 926 F.2d 1136, 1142-43 (Fed. Cir. 1991) (emphasis added).

-3-

If BSC wanted to rely on a hypothetical stent with double thickness as a potential non-infringing substitute, it could have done so at the damages trial in 2000. After all, the previous claim construction was <u>narrower</u> than the present one. A stent that lacked a substantially uniform thickness could have been proffered as a non-infringing alternative in 2000. Moreover, if BSC chose to focus on a theoretical non-infringing stent with 100% variations in thickness, the disclaimer of 100% variations was always present in the file history. Nothing prevented BSC from raising this theory at the damages trial in 2000. BSC waived the theory by not raising it during the damages trial, and it is not entitled to resurrect it now. <u>See</u> <u>USA Petroleum Co. v. Atlantic Richfield Co.</u>, 13 F.3d 1276, 1280 (9th Cir. 1994); <u>EEOC v.</u> <u>Westinghouse Elec. Corp.</u>, 925 F.2d 619, 628, 631 (3d Cir. 1991).

**B.    This Court Should Update the Damages**
**     Verdicts to Provide for Prejudgment Interest**

Section 285(1) of the patent statute states that upon a finding of infringement "the court shall award damages adequate to compensate for the infringement … together with interests and costs as fixed by the court." 35 U.S.C.§ 285(1). Declarations by Cordis' damages expert, with attachments showing the applicable amount prejudgment interest as against AVE and BSC, are attached hereto as Exhibits 5 and 6.

**1.    Prejudgment Interest Should Be Awarded at the Prime Rate**

In another stent case in this Court, BSC asked the Court to award "prejudgment interest at the prime rate compounded monthly." D.I. 308 in <u>Scimed Life Sys., Inc. v. Johnson &</u> <u>Johnson</u>, C.A. No. 99-904-SLR (the "Israel case") at 2. By Order dated April 20, 2004, this Court awarded interest at the rate BSC requested, and stated, as follows, that it would use the same rate in all cases involving these parties (D.I. 1314 in C.A. No. 99-904-SLR):

> The court … is in agreement with [Cordis'] position that
> prejudgment interest shall be calculated consistently in all the

> cases involving these parties. Therefore, by asking for the higher
> rate in the instant litigation [C.A. No. 99-904-SLR], [BSC and
> Scimed] shall be paying the higher rate in other litigation if
> judgment is entered against them.

Consistent with this Order, prejudgment interest should be awarded at the rate

BSC requested in the Israel case, i.e., "at the prime rate compounded monthly." Awarding

interest at that rate is consistent with decisions by this Court and by the Federal Circuit.

Federal Circuit cases do not specify a particular rate to be used in calculating

prejudgment interest. Instead, the Federal Circuit has left the selection of an appropriate rate to

the "sound discretion of the district court." C.R. Bard, Inc. v. Medtronic, Inc., 1999 WL 458305

at *15 (D. Del. June 15, 1999) (Robinson, J.) (Ex. 7), aff'd in part, rev'd in part on other grounds,

250 F.3d 760 (Fed. Cir. 2000), citing Bio-Rad Labs, Inc. v. Nicolet Instrument Corp., 807 F.2d

964, 969 (Fed. Cir. 1986). District courts have "wide latitude in the selection of interest rates …

and may award interest at or above the prime rate." Uniroyal, Inc. v. Rudkin-Wiley Corp., 939

F.2d 1540, 1545 (Fed. Cir. 1991).

In exercising their discretion, district courts "must be guided by the purpose of

prejudgment interest," Bio-Rad, 807 F.2d at 969, which is to fully compensate the patentee, not

only for the money it would have received but for the infringement, "but also [for] the foregone

use of the money between the time of the infringement and the date of the judgment." General

Motors Corp. v. Devex Corp., 461 U.S. 648, 655-56 (1983). Prejudgment interest is designed to

restore the patent owner to the position it would have been in absent the infringement. Id. at 655.

As this Court has held, "the prime rate best serves this purpose, because the prime

rate represents the cost of borrowing money," C.R. Bard v. Medtronic, 1999 WL 458305 at *15,

and thus provides fair compensation for the loss of the use of money over time. For this reason,

this Court routinely uses the prime rate in calculating prejudgment interest. See, e.g., Union

<u>Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.</u>, 2004 WL 1305849 at *19-20 (D. Del. June 9, 2004) (Robinson, C.J.) (Ex. 8); <u>TA Instruments, Inc. v. Perkin-Elmer Corp.</u>, 2003 WL 21843361 at *10 (D. Del. July 31, 2003) (Robinson, C.J.) (Ex. 9).[1]

Consistent with its prior decision in the Israel case, D.I. 1314 in C.A. No. 99-904-SLR, this Court should award prejudgment interest at the rate BSC requested, <u>i.e.</u>, the prime rate compounded monthly.

### 2.    Prejudgment Interest Should Be Awarded at the "Pre-tax" Rate

In prior briefing, defendants argued that the Court should use a "tax-adjusted rate" to calculate prejudgment interest. This approach suffers from a host of problems.

First, an "after-tax" approach would be inconsistent with the approach BSC advocated in the Israel case, when it asked the Court to award interest at the prime rate compounded monthly, without any reduction for taxes. As noted above, this Court held that it would apply that rate in other cases involving these parties.

Second, defendants' approach runs counter to numerous decisions by this Court, including <u>Union Carbide</u>, 2004 WL 1305849 at *19-20; <u>TA Instruments</u>, 2003 WL 21843361 at *10; <u>C.R. Bard v. Medtronic</u>, 1999 WL 458305 at *15; and <u>Biacore</u>, C.A. No. 97-274-SLR.

Third, defendants' approach is at odds with other precedent and to common sense. Under defendants' "after tax" approach, prejudgment interest would be reduced because of taxes that Cordis would have paid on the interest if defendants had taken a license instead of infringing. However, an award that was discounted for taxes would itself be subject to taxation,

---

[1] <u>See also</u> <u>Philips Electronics N.A. Corp. v. Contec Corp.</u>, 2004 WL 1622442 (D. Del. July 12, 2004) (Ex. 10); <u>Applera Corp. v. Micromass UK, Ltd.</u>, 204 F. Supp. 2d 724, 783 (D. Del. 2002), <u>aff'd</u>, 2003 WL 1795593 (Fed. Cir. Mar. 11, 2003); <u>Mobil Oil Corp. v. Amoco Chem. Corp.</u>, 915 F. Supp. 1333, 1369-73 (D. Del. 1994); <u>Mars, Inc. v. Conlux USA Corp.</u>, 818 F. Supp. 707, 720-21 (D. Del. 1993), <u>aff'd</u>, 16 F.3d 421 (Fed. Cir. 1993) (all awarding interest at the prime rate).

with Cordis having to pay taxes on the reduced award upon receiving it.  As the Supreme Court

has recognized, this approach would effectively subject the injured party to a "double deduction

for taxation, leaving [the injured party] with less income than it would have received if [the

wrong-doer] had not injured it."  Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481,

503 (1968).  That is inconsistent with the basic purpose of prejudgment interest, which is to

restore the patent owner to the position it would have been in absent the infringement.  General

Motors, 461 U.S. at 655.

   For this reason, courts consistently refuse to base damage awards on "after tax"

calculations.  See Hanover Shoe, 392 U.S. at 502-03 (1968) (rejecting an "after tax" approach to

damages); Kalman v. Berlyn Corp., 914 F.2d 1473, 1482-83 (Fed. Cir. 1990) (same).  Indeed, the

Federal Circuit – relying on the "concerns" "about double taxation" that the Supreme Court

expressed in Hanover Shoe – has rejected using an "after-tax" rate to calculate prejudgment

interest (referred to as "delay damages" in Court of Claims cases).  See Hughes Aircraft Co. v.

United States, 86 F.3d 1566, 1574-75 (Fed. Cir. 1996), vacated on other grounds, 520 U.S. 1183

(1997); see also Polaroid Corp. v. Eastman Kodak Co., 16 USPQ2d 1481, 1541 (D. Mass. Oct.

12, 1990) (rejecting the use of an "after tax" rate for prejudgment interest)..

   Consistent with settled law, this Court should use the prime rate (not an "after-

tax" rate) in calculating prejudgment interest.

### C.  Cordis Has Accepted the Method Proposed By BSC to Account for Sales of the NIR After the Damages Trial

   After the trials in 2000, BSC continued to sell the NIR until it eventually was

replaced by newer stents.  A damage award accordingly must take into account these post-trial

sales of the NIR by BSC.

In post-trial briefing in 2001, Cordis and BSC both agreed that it would be necessary to account for damages due to post-verdict sales of the NIR, but disagreed on the methodology to be used in accounting for such sales. In the interests of bringing this case to a conclusion at long last, Cordis is willing to use the accounting methodology proposed by BSC.

BSC's methodology – which Cordis is willing to use – recognizes that Cordis' damages have two components: a "lost profits" component and a "reasonable royalty" component.

With respect to the "lost profits" component, the calculation involves multiplying the applicable number of unit sales times the relevant profit margin. BSC proposed calculating the number of NIR stents for which Cordis would receive lost profits "by multiplying Cordis' share of the non-infringing market times the number [of] NIR units sold in the post-trial period," D.I. 1097 at 13, and then multiplying that number times "the average of the profit per unit figures proposed by the parties' experts for Q3 2000 ... to arrive at a lost profits damages award for the post-trial period." Id. at 14.

With respect to the "reasonable royalty" component, BSC proposed that the remaining post-verdict sales of the NIR "would be subject to a reasonable royalty of 20%, as found by the jury." Id.

With Cordis having accepted BSC's methodology, the accounting for post-verdict sales of the NIR should be straightforward. Cordis' damages expert has made the necessary calculation using BSC's methodology to account for sales of the NIR through November 2004. See Ex. 6. Cordis has asked BSC whether there have been any NIR sales after November 2004, and if so, to provide documents showing the extent of such sales. If there were any sales of the

NIR after November 2004, Cordis will submit a supplemental calculation of Cordis' post-verdict damages.

Of course, Cordis would be entitled to prejudgment interest on BSC's post-verdict sales of the NIR, as well as on its pre-verdict sales.  C.R. Bard, 1999 WL 458305 at *15.

### D.    Post-Judgment Interest Should Be Awarded

Post-judgment interest is calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).  Post-judgment interest should be awarded once the Court enters a damages verdict.  See Wilson v. Union Pacific R.R. Co., 56 F.3d 1226 (10th Cir. 1995) (holding that postjudgment interest does not commence until judgment settling the amount of damages, not just liability, is entered); Ashland Oil, Inc. v. Phillips Petr. Co., 607 F.2d 335, 336 (10th Cir. 1979) (postjudgment interest accrued from the date damages were correctly calculated, when damages were recalculated after remand).

## CONCLUSION

For the reasons set forth above, this Court should: (1) reinstate the damages verdicts from December 2000, (2) award prejudgment interest at the prime rate compounded monthly; and (3) direct BSC and Cordis to try to reach an agreement concerning damages for BSC's post-verdict sales of the NIR.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (#2114)
John G. Day (#2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Cordis Corporation*

*Of Counsel:*

Gregory L. Diskant
William F. Cavanaugh, Jr.
Eugene M. Gelernter
Michael J. Timmons
Scott B. Howard
Kathleen Crotty
Rosa E. Son
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036
(212) 336-2000

Eric I. Harris
JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, NJ  08933-7002

Dated: April 19, 2005
156111.1

-10-

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of April, 2005, the attached **REDACTED PUBLIC VERSION OF OPENING BRIEF IN SUPPORT OF CORDIS' MOTION TO REINSTATE AND UPDATE THE DAMAGE VERDICTS AGAINST AVE AND BSC** was served upon the below-named counsel of record at the address and in the manner indicated:

Karen Jacobs Louden, Esquire                                         HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

Raphael V. Lupo, Esquire                                          VIA FEDERAL EXPRESS
McDermott, Will & Emery
600 13th Street, N.W.
Washington, D.C.  20005

Josy W. Ingersoll, Esquire                                           HAND DELIVERY
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

George E. Badenoch, Esquire                                  VIA FEDERAL EXPRESS
Kenyon & Kenyon
One Broadway
New York, NY  10004


                                    _____/s/ John G. Day_____
                                    John G. Day